UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN GIANACOPOULOS, R.A.,          :
                                   :CIVIL ACTION NO. 3:05-CV-2417
          Plaintiff,               :
                                   :(JUDGE CONABOY)
          v.                       :
                                   :
GLEN OAK COUNTRY CLUB, et al.,:
                                   :
          Defendants.              :

---

**MEMORANDUM**

Here we consider whether summary judgment is appropriate on
Plaintiff's Copyright Infringement claim against Defendants Glen
Oak, Louis Shapiro and MOS Design, Inc., Count Two of his
Complaint.  (Doc. 1 at 13.)  This is the only claim remaining in
the three summary judgment motions pending before the Court: 1)
Motion of Plaintiff, John Gianacopoulos, R.A., for Partial Summary
Judgment (Doc. 44-1); 2) Defendant Mos Design Inc.'S Motion for
Summary Judgment (Doc. 42-1); and 3) Defendants', Glen Oak Country
Club's and Louis Shapiro's Motion for Summary Judgment (Doc. 45).
In a Memorandum and Order dated December 12, 2006, the Court denied
the parties' summary judgment motions except as to the copyright
claim.  (Doc. 83.)  The Court held Oral Argument on the copyright
claim on January 16, 2007.  Following a site inspection on January
22, 2007, the Court allowed the parties to file supplemental briefs
on or before February 1, 2007.

1

## I. Background

Because the background of this case was set out in our previous summary judgment Memorandum (Doc. 83 at 2-5.), we will highlight only some facts pertinent to the copyright infringement claim.

The parties do not dispute that Plaintiff gave Defendant Glen Oak some drawings and exterior sketches of a proposed addition/renovation to the Glen Oak Country Club clubhouse/locker room. Six drawings were reduced to CAD format, and Defendant Glen Oak gave a disk containing the six drawings to Defendant MOS after Glen Oak awarded MOS a contract for the addition/renovation.[1] The six drawings are 1) a Floor Plan with a total area of 11,401 square feet for Phases I and II; 2) a Floor Plan with a total area of 11,142 square feet for Phases I and II; 3) a Floor Plan with a total area of 8,977 square feet for Phase I; 4) a Floor Plan with a total area of 8,718 square feet for Phase I; 5) a Site Plan for Phase II; and 6) a Site Plan for Phase I. (*See*, *e.g.*, Doc. 46, Ex. Z.)

The record also reveals that Plaintiff obtained copyright protection on certain documents relating to the project. (Doc. 46 Ex. WW.) All documents are dated October 11, 2005. (*Id.*)

---

[1] Plaintiff has not come forward with any evidence, either in written submissions or at Oral Argument, to indicate that the Disk contained drawings in addition to or different from those identified by Defendants.

2

Copyright number VAu684-177, identified as a technical drawing of the Glen Oak Country Club Locker Facility Addition – First Floor Plan, is a Floor Plan with an area of 9,643 square feet.  Copyright number VAu684-178, identified as a technical drawing of the Glen Oak Country Club Locker Facility Addition – Exterior Views, has three attached exterior sketches showing a) the proposed facility from a distance which shows the entire building; b) a closer view of the locker room addition; and c) a closer view of the proposed new entry.  (*Id.*)  Copyright number VAu684-179, identified as a technical drawing of the Glen Oak Country Club Locker Facility Addition – Site Plan, is a Site Plan of the property which includes topographical features around approximately two-thirds of the building.

Relevant specific features of the drawings and sketches will be discussed below.

## II. Discussion

### A.   *Legal Framework*

#### 1.   *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(<u>citing</u> Fed. R. Civ. P. 56(c)).  The summary judgment

3

standard does not change when the parties have filed cross-motions for summary judgment. *Applemans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Id.* at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988). An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257. In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*,

4

477 U.S. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial.  *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**2.  Copyright Infringement**

The parties have expressed no disagreement in the law applicable to the copyright infringement claim before the Court.

A copyright automatically exists the moment the work is created: registration is a separate matter and is required before a copyright infringement action can be brought in federal court.  *See* 17 U.S.C. §§ 408, 411 and 37 C.F.R. § 202.

In pertinent part, Section 106 of the Copyright Act, 17 U.S.C. § 106, provides that the owner of the copyright has "the exclusive rights to do and to authorize the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental , lease, or lending[.]" 17 U.S.C. § 106(1)-(3).  Section 501(a) of the Act provides that anyone who violates these rights is an infringer of the copyright.  "The Copyright Act grants the owner of a copyright five fundamental rights – the exclusive rights of reproduction, adaptation, distribution, performance, and display."  Michael A. Epstein, *Epstein on Intellectual Property* 12-13 (5th ed. 2006).

Stated in element form, the two elements necessary to state a claim for copyright infringement are: 1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Dam Things from Denmark v. Russ Berrie & Co. Inc.*, 290 F.3d 548, 561 (3d Cir. 2002) (citation omitted).

Inferential proof of the second element is allowed.  The requirements for inferential proof are: 1) the defendant had access to the protected work; and 2) the two works are "substantially similar."  *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 291 (3d Cir. 1991); *Bright v. Friedenberg*, 1999 WL 89716, at

*1 (1999).  Access is proven when a plaintiff shows the defendant had an opportunity to view or copy the plaintiff's work.  *See*, *e.g.*, *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004).  Access may not be inferred through mere speculation or conjecture, but evidence that a third party with whom both the plaintiff and defendant were concurrently dealing is sufficient to establish access.  *Id.* (citations omitted).

The "substantial similarity" element is determined by a comparison of the works.  *CSM Investors v. Everest Development, Ltd.*, 840 F. Supp. 1304, 1311 (D. Minn. 1994).  The "substantial similarity" inquiry has two components, sometimes described as "extrinsic" and "intrinsic."  *See*, *e.g.*, *Dam Things*, 290 F. 3d at 562.  "The court first analyzes the similarities of the ideas extrinsically by focusing on the objective similarities in the details of the works."  *CSM Investors* at 1311.   In *Dam Things*, the Third Circuit Court of Appeals explained the two-step test for determining substantial similarity:

> First, the opinions of experts may be called
> upon in determining whether there is
> sufficient similarity between the works as to
> conclude that the alleged infringer "copied"
> the work.  Second, the fact-finder is to
> determine whether a "lay-observer" would
> believe that the copying was of protectible
> aspects of the copyrighted work.

*Dam Things*, 290 F.3d at 562 (internal citations omitted).  The court noted that "[t]his test makes clear it is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work."  *Id.* at 562 n.9.

Regarding burden of proof, the Third Circuit has stated that when there is only a limited number of ways to express an idea, the burden of proof is heavy on the copyright infringement plaintiff, who may have to show near identity between works at issue.  *Kay Berry, Inc. v. Taylor Gifts Inc.*, 421 F.3d 199, 209 (3d Cir. 2005). An alleged infringer bears the burden of proof on any affirmative defense.  *Video Pipeline v. Buena Vista Home Entertainment*, 342 F.3d 191 (3d Cir. 2003).

**B.    *Plaintiff's Infringement Claim***

For the reasons discussed below, we conclude Plaintiff cannot show substantial similarity between the copyrighted documents and Defendant MOS Design's plans or executed structure. Therefore, summary judgment in favor of Defendants as to Plaintiff's Copyright Infringement claim is appropriate.

**1.    *Ownership of a Valid Copyright***

Plaintiff satisfies the ownership requirement of the copyright claim.  Defendants do not dispute that Plaintiff obtained valid copyright protection on certain materials relating to the project.

(Doc. 46 Ex. WW.)  The copyrighted material is a Floor Plan with an area of 9,643 square feet (VAu684-177), exterior views of the proposed project (VAu684-178), and a Site Plan of the property (VAu684-179).  (*Id.*)

## 2.   *Access to Copyrighted Material*

Despite acknowledging ownership, Defendants assert Plaintiff cannot satisfy the copying element of the claim because Defendants did not have access to the copyrighted material.  The basis of this argument is the assertion that the site plan and floor plan documents Plaintiff gave to Defendant Glen Oak, initially for presentation at a membership meeting, are not the same documents Plaintiff copyrighted.  (Doc. 50 at 21; Doc. 64 at 7.)  Defendants further maintain the only documents relating to the project received by Defendant MOS are the site plans and floor plans Plaintiff gave to Glen Oak.  (*Id.*)  As evidence, Defendants point to a disk which Defendant Shapiro (Defendant Glen Oak's liaison for the project) gave to MOS: it contains only the drawings Plaintiff gave to Glen Oak and none of them are the copyrighted documents. (*Id.*)  Defendant Glen Oak acknowledges receipt of the copyrighted exterior sketch from Plaintiff but asserts it never gave the sketch to Defendant MOS.  (Doc. 64 at 7-8.)  Defendant MOS concurs.  (Doc. 68 at 10.)

Plaintiff has not directly addressed the discrepancy between the copyrighted drawings and those reduced to disk format and given

to MOS except to state at oral argument that it was curious that the copyrighted site plan and floor plan would not have been given to Defendant Glen Oak.

Based on the current record, we know Defendant Glen Oak had access to the copyrighted exterior view. Making every inference in favor of Plaintiff, we will assume *arguendo* that Defendant MOS also had access to the exterior sketch. We will also assume *arguendo* that Defendants had access to documents other than those reduced to the evidentiary disk, including the floor plan and site plan copyrighted by Plaintiff. With these assumptions, we turn to whether Defendant MOS Design's plans or structure are substantially similar to the copyrighted works.

### 3. *Substantial Similarity*

Based on the comparison required to determine whether the copyrighted material and allegedly infringing work are substantially similar, we conclude such similarity does not exist. In undertaking this comparison, we compare only Plaintiff's copyrighted works with Defendant MOS Design's plans and structure – we do not review the works Plaintiff submitted to Defendant Glen Oak for which he did not obtain copyright protection.

As noted above, the inquiry into whether the copyrighted material and the allegedly infringing work are substantially similar is twofold, with the first part of the analysis allowing consideration of "expert opinion" and the second focusing on the

10

lay-observer's opinion.  *See supra* p. 7 (*quoting Dam Things*, 290 F.3d at 562).  Regarding the required inquiry, we note as a threshold matter that experts have differing opinions and this case is no exception as evidenced by the parties' expert reports.  (*See* Doc. 46 Ex. XX; Doc. 47 Ex. 4.)  Because experts so often have different diametrically opposing opinions, as do the parties' experts in this case (*see id.*), the concept that substantial similarity is to be determined by the lay-observer's view of the work becomes extremely important.  We approach the following analysis from this perspective.

  **a. Floor Plan**

  Plaintiff raises ten specific similarities between his work and that of Defendant MOS regarding the floor plans.  (Doc. 51 at 34-36.)  We begin by addressing each of Plaintiff's asserted similarities.[2]

  1. Plaintiff cites square footage as indicative of similarity.  (Doc. 51 at 34.)  He cites no authority to support the proposition that square footage is indicative of substantial similarity.

---

  [2]  Plaintiff's Exhibits submitted in support of his summary judgment motion (Doc. 44) are docketed as Document 47, with the Table of Contents of Exhibits docketed as 47-1.  Throughout his supporting brief (Doc. 51) Plaintiff cites to lettered exhibits while the Table of Contents identifies exhibits by number (Doc. 47-1).  To further confuse the matter, the Table of Contents exhibit numbers do not necessarily correspond with the attachment numbers to Document 47 shown on the docket.  In this document, we will refer to Plaintiff's Exhibits by the numbers assigned in the Table of Contents of Exhibits (Doc. 47-1).

Moreover, Plaintiff states the relevant areas to be 7,450 square feet and 8,112 square feet where the copyrighted floor plan to which Plaintiff cites indicates a square footage of 9,643 square feet (*see* Doc. 47 Ex. 7.)  This discrepancy undermines Plaintiff's argument as does the fact that both site considerations and project parameters dictated by Defendant Glen Oak impact the total area of a project.

2.  Plaintiff points to the rear wall kitchen offset in both plans to be about seven feet from the rear face of the existing structure.  (Doc. 51 at 34.)  Without being able to calculate an exact measurement of this feature comparing the copyrighted floor plan and MOS' floor plan, a visually significant difference exists regarding the kitchen setback.  (*See* Doc. 47 Exs. 7, 23.)

3.  Regarding the kitchen interior wall placement, any depth consideration relevant to the front entry is offset by distinctions in width and depth from interior wall to rear exterior wall.  (*See* Doc. 47 Exs. 7, 23.)

4.  Although Plaintiff claims the MOS plan is similar because it places the lobby immediately adjacent to the kitchen, the MOS design does not do so.  Rather, offices are placed between the lobby and the kitchen.  (*See* Doc. 47 Exs. 7, 23.)

5.  Plaintiff asserts a similarity in the entry and drop off location width.  (Doc. 51 at 35.)  However, a comparison reveals the entry and drop off widths differ in that Plaintiff's is located

12

at an angle in front of the existing building and the MOS design is on the same plane as the existing structure with no front extension.  (*See* Doc. 47 Exs. 7, 23.)

6-7.  Plaintiff's assertions regarding the lobby area and its relationship to other areas of the structure (Doc. 51 at 35) cannot be seen as supportive of copyright infringement.  The relationships of the new lobby to the existing building and locker room and other areas are common sense features rather than copyrightable design features, particularly in light of site restrictions and owner preferences.  (*See* Doc. 47 Exs. 7, 23; Doc. 64 at 10.)  It is noteworthy that Plaintiff has not refuted Defendants' assertions that the basic layout was owner directed. (*See*, *e.g.*, Doc. 50 at 29; Doc. 64 at 10.)

8-10.  Similarly, Plaintiff cannot rely on the hallway running from the lobby to the rear of the building, location of the locker room addition or configuration of the trash room (Doc. 35 at 36) as indicia of similarity.  (*See*, *e.g.*, Doc. 50 at 29.)

We turn now to a more general comparison of Plaintiff's copyrighted floor plan and the MOS' floor plan.  Beginning with the locker room, both the shape and the roof design are different. Other than rows of lockers perpendicular to exterior walls, the interior layout of the space is very different. (*See* Doc. 47 Exs. 7, 23.)

The kitchen designs in the floor plans bear little resemblance

13

to one another aside from being located between the existing clubhouse and locker room addition. (*See* Doc. 47 Exs. 7, 23.) As noted above, this relationship was owner and common sense driven.

The lobby designs are both rectangular, however the width and depth and vary. (*Id.*) The depth varies to the point that the MOS' lobby looks and functions as a wide hall with offices directly accessible on the rear wall where Plaintiff's plan has a solid rear wall and appears to be almost twice the depth. (*Id.*) Plaintiff's lobby has an angular portion to the left connecting it to the entry. (*Id.*) MOS' lobby is set back from the locker room addition while Plaintiff's is on the same plane. (*Id.*)

Most notably, regarding the entry, Plaintiff's is offset at an angle of approximately 45 degrees to the face of the main lobby extending in front of the existing clubhouse. The floor plan shows a circular drive with a covered entry extending over the driveway. (Doc. 47 Ex. 7.) In contrast, the MOS' design entry is directly into the lobby with no extended roof covering the driveway. (Doc. 47 Ex. 23.)

Considering both Plaintiff's specific asserted similarities and the Court's comparison of the floor plans, we conclude that no reasonable factfinder could conclude that these plans are substantially similar in ways protected by copyright.

**b.   Site Plan**

Plaintiff maintains that the site plans show substantial

similarity in that both place the addition on the southwest side of the existing structure, and the vehicle drop off points and circular roadways are similarly situated.  (Doc. 47 Exs. 8, 22.)

MOS argues, and we agree, that the location of the addition was driven by site features, practical considerations and owner instructions.  (Doc. 68 at 12-13.)  Further, we do not find sufficient protectible similarity between the site plans.  Notably, the vehicle drop off points differ (as relevant to the different entries discussed above), the driveway shapes vary, and the plans show different access points with the main road.  (Doc. 47 Exs. 8, 22.)  Further, Plaintiff does not refute Defendants' assertion that the drop off points are similar to where the existing drop off point had been and the locker room additions are located where the existing locker room had been.  (*See*, *e.g.*, Doc. 64 at 10.)   Based on this comparison, we conclude the site plans are not substantially similar in ways protected by copyright.

  c.    **Exterior View**

Plaintiff points to four areas to support his infringement claim as it relates to his copyrighted exterior view.  (Doc. 51 at 37-38.)  (*See* Doc. 47 Exs. 6, 24.)

Plaintiff first points to the hip roofs and large overhangs of both his and MOS' design.  (Doc. 51 at 37.)  These elements are features of the pre-existing clubhouse and other structures on the Glen Oak property.  (*See*, *e.g.*, Doc. 46 Ex. XX, pp. 5-12.)

15

Further, the roof shapes of the locker room addition differ in that Plaintiff's is pyramidal and MOS' is rectangular (*see* Doc. 47 Exs. 6, 24); and Plaintiff's canopy roof is the Dutch-hip style found elsewhere on the property and MOS' is a more simple triangle (Doc. 46 Ex. XX at 5-8, 31, 37).

Next Plaintiff notes the use of clerestory windows, also known as ribbon windows (Doc. 64 at 12), in both locker room additions. (Doc. 51 at 37.)  This type of window is used in the pre-existing clubhouse (Doc. 47 Ex. XX p. 10).  Further, these windows are a feature in a 1998 design by Burkavage Associates (Doc. 46 Ex. XX p. 34) - whether or not Plaintiff ever saw these sketches, the similarity exemplifies the result of the architects' efforts to keep the style of the addition harmonious with that of the existing structure.

Similarly, the full or partial stone veneer on the outside of the building is a prominent feature of the exterior of the pre-existing clubhouse and other Glen Oak structures (see Doc. 46 Ex. XX pp. 9-12) and, contrary to Plaintiff's argument (Doc. 51 at 37), does not support a finding of copyright infringement.

Next Plaintiff points to the entrance canopy, stating that both selected "a sloped roof exterior canopy design located between the existing building and new addition wing signifying the place of entry."  (Doc. 51 at 37.)  This statement is not factually accurate in that MOS' did not adopt a canopy design.  (See Doc. 47 Ex. 24).

16

Rather, where Plaintiff's entry is at a 45 degree angle from the face of the addition with a canopy apparently at the same height as the adjacent roof extending over the driveway, MOS' entry is on the same plane as the addition with only an overhang over the entry area, the roof of which is at a higher elevation than the lobby area roof. (*See* Doc. 47 Ex. 6, 24; Doc. 46 Ex. XX at 37.) Additionally, any detail of Plaintiff's actual entry area under the canopy could not be copied because it is not visible in the copyrighted Exterior View. (*See* Doc. 47 Ex. 6.)  Aside from being placed adjacent to the existing clubhouse to the left with the locker room addition to the right, the entrance areas of Plaintiff's and MOS' designs are markedly different. (*See* Doc. 47 Ex. 6, 24; Doc. 46 Ex. XX at 37.)

Having reviewed the features identified by Plaintiff as evidence of substantial similarity and copyright infringement, we conclude that a reasonable factfinder could not find the requisite similarity.  The conclusion is reinforced by direct observation of the current structure.  At a site visit, the overall impression of the building could not be seen as substantially similar to Plaintiff's exterior sketch in any feature protectible by the Copyright Act.  Most notably, the entry area of Plaintiff's copyrighted Exterior View (Doc. 47 Ex. 6) and current entry area bear no similarity except the few elements characteristic of many Glen Oak structures - use of stone and visible timber.  On both

17

designs, the entry area is the prominent architectural feature and focal point of the structure - their remarkable differences, both in impression and detail, refute any finding of substantial similarity between Plaintiff's Exterior View sketch and the MOS' structure as designed and executed.

In addition to the general impression focused on the entry area (by design and observation), the site visit reinforced distinguishing features.  Plaintiff's sketch gives the overall impression of three structural areas nearly equal in size, the canopy area in the middle and a square locker room to the right (Doc. 47 Ex. 6); the three areas in MOS' design do not have that similarity of scale - the locker room is clearly rectangular and the entry area is more a connecting feature.  The use of stone, timber, overhanging roofs and clerestory windows cited by Plaintiff as copyrightable elements of his design are all prominent visual features of pre-existing Glen Oak structures.  Also, a visit to the property reinforced the site-driven location of the addition: existing slopes and hills would have made any other location unlikely.

In consideration of the Plaintiff' Exterior View (Doc. 47 Ex. 6), Defendant MOS' Building Elevations (*id*. Ex. 24), and the Court's visit to the Glen Oak property, we conclude that no reasonable factfinder could conclude copyright infringement has occurred.

18

### III. Conclusion

For the reasons discussed above, we conclude that Plaintiff has not come forward with, and we do not find, sufficient evidence from which a reasonable factfinder could find Defendants' have infringed his copyrighted material.  Therefore, summary judgment for Defendants is appropriate on Plaintiff's Copyright Infringement claim.  We recognize that attorney fees may statutorily be sought by any party in a copyright infringement action.  *See* 17 U.S.C. § 505.  However, consideration of an award of fees will be held in abeyance.  An appropriate Order follows.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: February 2, 2007_____

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN GIANACOPOULOS, R.A.,          :
                                   :CIVIL ACTION NO. 3:05-CV-2417
        Plaintiff,                 :
                                   :(JUDGE CONABOY)
        v.                         :
                                   :
GLEN OAK COUNTRY CLUB, et al.,     :
                                   :
        Defendants.                :

_____

**ORDER**

   **AND NOW, THIS 2nd DAY OF FEBRUARY 2007, FOR THE REASONS SET
OUT IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:**

1.   Motion of Plaintiff, John Gianacopoulos, R.A., for
     Partial Summary Judgment (Doc. 44-1) is DENIED as to the
     remaining Copyright Infringement claim, Count Two of his
     Complaint (Doc. 1);

2.   Defendant Mos Design Inc.'S Motion for Summary Judgment
     (Doc. 42-1) is GRANTED as to Plaintiff's Copyright
     Infringement claim, Count Two of his Complaint (Doc. 1);

3.   Defendants', Glen Oak Country Club's and Louis Shapiro's
     Motion for Summary Judgment (Doc. 45) is GRANTED as to
     Plaintiff's Copyright Infringement claim, Count Two of
     his Complaint (Doc. 1);

4.   Count Two of Plaintiff's Complaint (Doc. 1) for Copyright
     Infringement is dismissed;

5.    The matters remaining for trial in this case are Count

One for Breach of Contract and Count Four for Tortious

Interference;

6.    The Clerk of Court is directed to mark the docket.


                                    S/Richard P. Conaboy
                                    RICHARD P. CONABOY
                                    United States District Judge