## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN GIANACOPOULOS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:05-2417** |
| **v.** | : | |
| | | **(MANNION, M.J.)** |
| **MOS DESIGN, INC.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

This matter is before the court following a non-jury trial to determine whether the plaintiff, John Gianacopoulos, ("plaintiff"), has established by a preponderance of the evidence that the defendant, MOS Design, Inc., ("defendant"), intentionally interfered with the plaintiff's performance of an architectural contract with the Glen Oak Country Club, ("Glen Oak").  After considering the testimony and documents presented at the trial, the court finds that the plaintiff has not established his claim against the defendant. Therefore, judgment will be entered in favor of the defendant.

Pursuant to Federal Rule of Civil Procedure 52(a), this memorandum sets forth the court's findings of fact and conclusions of law regarding the plaintiff's claim.


## I.     PROCEDURAL HISTORY

As the instant memorandum is written for the benefit of the parties, only the relevant history will be set forth herein.  On November 21, 2005, the

plaintiff filed a five-count complaint against Glen Oak, Burkavage Design Associates, Inc., ("Burkavage"), Louis B. Shapiro, ("Shapiro"), the defendant, and various John and Jane Doe individuals[1].   The matter was originally assigned to the Honorable Richard P. Conaboy.  As the result of various orders of court and agreements by the parties, only Count IV of the complaint remains against the defendant, MOS Design, Inc.

By consent filed March 17, 2008, the action was reassigned to the undersigned by agreement of the parties and all counsel for a non-jury trial with appeal from any judgment to the United States Court of Appeals.  (Doc. No. 172).  A non-jury trial was held on March 17, and March 18, 2008.  On March 27, and March 28, 2008, counsel filed legal briefs containing their proposed findings of fact and conclusions of law.  (Doc. Nos. 175 & 176).

## II.    FINDINGS OF FACT

Upon review of the testimony and evidence presented at trial, as well as the submissions of counsel, the court makes the following findings of fact:

The plaintiff is a licensed architect in the Commonwealth of

---

[1]The counts of the complaint included breach of contract against Glen Oak, (Count I); copyright infringement against Glen Oak, Burkavage, Shapiro, and the defendant, (Count II); tortious conversion against Glen Oak, Burkavage, Shapiro, and the defendant, (Count III); tortious interference with existing contractual relations against Burkavage and the defendant, (Count IV); and unjust enrichment against Glen Oak and the defendant, (Count V).

Pennsylvania, having a professional practice in Scranton, Pennsylvania. (TR. 13).

The defendant is an architectural firm located in Scranton, Pennsylvania. (Doc. No. 1, ¶¶9, 9.1, Ex. P-8B ).  Eugene Ogozalek is the Secretary and Treasurer of MOS Design, Inc., and a managing agent of the firm. (TR. 146).

Glen Oak is a private golf and country club located in Clarks Summit, Pennsylvania.  (Doc. No. 1, ¶¶ 6, 6.1).

The plaintiff first performed work for Glen Oak in the year 2000 when he prepared schematics for a dining room banquet hall, locker room, and grill expansion.  The plaintiff was not under contract with Glen Oak to complete the schematics and the project ultimately did not go forward, as it was part of a feasibility study.  (TR. 15).

Subsequently, in 2001, the plaintiff performed a poolhouse project for Glen Oak.  The plaintiff was under a contract with Glen Oak for this project, and the project was completed by the plaintiff.  (TR. 16).

At the time the plaintiff was working on the poolhouse project, he was informed by Glen Oak's Long Range Planning Committee that they were interested in cost estimates for another project which included demolition and reconstruction of Glen Oak's locker rooms, as well as a kitchen addition.  (TR. 16-17).  On May 12, 2002, the plaintiff and Glen Oak entered into a Standard Form of Agreement Between Owner and Architect, 1987 Edition, ("contract"),

3

relating to this project.  (Ex. P-1, TR. 27, 85).

Of importance for purposes of the instant action are several articles contained within the contract.   Article 8 of the contract, "Termination, Suspension, or Abandonment," sets forth the conditions upon which the contract can be terminated, suspended, or abandoned by the parties.  This article provides for written notice in order to terminate, suspend, or abandon the contract. Further, specific time frames are provided in Article 8 for written notice, which differ based upon whether the contract is terminated, suspended or abandoned.  (Ex. P-1).

Article 2 of the contract, "Scope of Architect's Basic Services," provides for various phases of the project, including the Schematic Design Phase, Design Development Phase, Construction Documents Phase, Bidding or Negotiation Phase, and Construction Phase.  (Ex. P-1, Article 2, ¶¶ 2.2-2.6).

Relating to Article 2, Article 11 of the contract, "Basis of Compensation," provides, that for the architect's basic services, basic compensation shall be computed at "[a] sum of 7.2% of the total cost for services mentioned herein in Article 1 and Article 2." (Ex. P-1, Article 11. ¶11.2.1). It further provides, that where compensation is based on a stipulated sum or percentage of the construction cost, progress payments for basic services in each phase shall total the following percentages of the total basic compensation payable: Schematic Design Phase: 5%; Design Development Phase: 15%; Construction Documents Phase: 50%; Bidding or Negotiation Phase: 5%; and

4

Construction Phase: 25%.  (Ex. P-1, Article 11, ¶11.2.2).

Having entered into the foregoing contract with Glen Oak, in furtherance of the project, the plaintiff prepared various schematic drawings, including different designs, an exterior view, and site plans that included different exterior treatments with varied square footage.  The actual architectural drawings submitted by the plaintiff to Glen Oak contained the plaintiff's name and logo, usually at the bottom of the page, but were undated.  (Exs. P-30, P-30.1, P-32, P-32.1, P-137, P-137.1, P-138, P-138.1, P-139, P-139.1, P-140, P-140.1, P-141, P-141.1).  These drawings were provided to Glen Oak in approximately July or August of 2002.  They were submitted to the Long Range Planning Committee and the Board of Directors for consideration, as well as for presentation to the membership.  (TR. 29-30, 32, 54, 101-02).  These documents completed the schematic design phase of the project, and the plaintiff was compensated for his services related to this phase.  (Ex. P-7, TR. 19).

Ultimately, the Board of Directors decided not to move forward with the project designed by the plaintiff because of insufficient membership support.  (TR. 103, 120-21).  Instead, in March 2003, Glen Oak opted to go forward with a smaller "band-aid" project, which included renovations to the existing locker room, as opposed to demolition and reconstruction of a new facility.  (TR. 96-97, 103-04, 121).

Despite their decision not go forward with the project prepared by the

plaintiff, Glen Oak never provided the plaintiff with notice, written or otherwise, of termination, suspension or abandonment of their contract, prior to institution of this suit.  (TR. 92-93, 110, 118).  In fact, for a period of time spanning from approximately December 2002 or January 2003 until June 2003, the plaintiff attempted to contact various members of Glen Oak to determine the status of the project. However, the plaintiff received no response. (TR. 55).  Subsequent to this, the plaintiff made no further attempt to communicate with Glen Oak regarding the project.  (TR. 56).

In proceeding with the smaller "band-aid" project, Glen Oak solicited the services of two other architectural firms, Highland Associates and Burkavage, however neither firm was interested in undertaking the project.  (TR. 106). Finally, in the summer of 2003, Glen Oak, through Shapiro who was a member of Glen Oak's Long Range Planning Committee, contacted the defendant, through Mr. Ogozalek, and proposed to retain the defendant to undertake the new smaller project.  (TR. 106, 146-48).

The evidence establishes that Mr. Ogozalek did not solicit Glen Oak for the contract in question. (TR. 106-07, 121).  Moreover, unlike members of the Highland and Burkavage firms, Mr. Ogozalek was not a member of Glen Oak, and did not know any of the board members of Glen Oak prior to receiving the contract in question. (TR. 169).  Mr. Ogozalek did not know, in 2002, at the time that the plaintiff entered into a contract with Glen Oak, that Glen Oak was considering any kind of renovation or project with regard to its facilities.  (Id.).

6

During preliminary discussions with Glen Oak, Mr. Ogozalek was informed that the plaintiff had performed design services approximately one year earlier, and that two other firms, Highland and Burkavage, had been solicited for services as well. (TR. 149).

After discussions with Glen Oak, the defendant agreed to perform the smaller project, and a Standard Form of Agreement Between Owner and Architect, 1997 Edition, was signed by Glen Oak and MOS Design, Inc., on August 2, 2003. (Ex. P-8B).

Having been retained, Mr. Ogozalek requested that Glen Oak provide him with a copy of any site plans and/or drawings reflecting the existing structure[2].  In responding to the defendant's request for existing site plans and/or drawings, Glen Oak provided the defendant with a survey drawing and floor plans to which were attached some of the previously referenced schematic drawings prepared by the plaintiff in furtherance of the initial larger project.  (TR. 88, 153).  At that time, Mr. Ogozalek was informed that Glen Oak had been dissatisfied with the plaintiff's work and that he was not the architect for the project proposed to Mr. Ogozalek.  (TR. 161, 162).  Glen Oak did not inform Mr. Ogozalek of the contract entered into between the plaintiff and Glen Oak in May 2002, and Mr. Ogozalek did not inquire into any existing contractual relationship between the plaintiff and Glen Oak.  (TR. 158, 161,

---

[2]The plaintiff was also provided with an existing site plan prepared by John Henemuth, a surveyor.  (TR. 32-33).

162).

Soon after the defendant's acceptance of the project, excessive rains and flooding of the locker room led Glen Oak to consider changing the scope of the project proposed to again include demolition and rebuilding of the locker room, as opposed to mere renovation.  (TR. 97-98).  Minutes of a meeting dated August 21, 2003, indicated that as a result of significant rainfall and flooding, MOS Design, Inc. was asked to place on hold the smaller project so that the Board, at its September 2003 meeting, could consider the demolition of the locker room building and design of a new locker room facility. (TR. 171-72).  Subsequently, the larger project was approved and the defendant ultimately completed the project at an approximate cost of $2 million.  (TR. 110).

In approximately May or June 2004, the plaintiff discovered the defendant's involvement with the Glen Oak project. (TR. 57). He subsequently instituted the instant action claiming, among other things, that the defendant intentionally interfered with his contractual relationship with Glen Oak[3].

---

[3]The court notes that the instant action was initially brought in the federal courts based upon federal question jurisdiction.  Specifically, the plaintiff claimed copyright infringement pursuant to the United States Copyright Act of 1976, as amended, 17 U.S.C. §101, et seq.  While that count was previously dismissed by the district court, leaving only state law claims, the court retained pendent jurisdiction pursuant to 28 U.S.C. §1367.

8

## III.   DISCUSSION

The Commonwealth of Pennsylvania has explicitly adopted the Restatement (Second) of Torts §766 as the standard governing the law of intentional interference with contracts.  Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368 (3d Cir.1991)(citing United States Healthcare, Inc. v. Blue Cross, 898 F.2d 914, 925 (3d Cir.1990); Silver v. Mendel, 894 F.2d 598, 601 (3d Cir.), cert. denied, 496 U.S. 926 (1990); Tose v. First Pa. Bank, N.A., 648 F.2d 879, 898 (3d Cir.), cert. denied, 454 U.S. 893 (1981); Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1181-83 (Pa. 1978), cert. denied, 442 U.S. 907 (1979)).  That section provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts §766 (1979).

In order to establish his claim in our case, the plaintiff must prove the following four factors by a preponderance of the evidence: (1) there was an existing contractual relationship between the plaintiff and Glen Oak; (2) the defendant intended to interfere with that contract by inducing a breach or otherwise causing Glen Oak not to perform; (3) the defendant's actions were not privileged or justified; and (4) the plaintiff suffered pecuniary damages as a result of the breach of contract.  Restatement (Second) of Torts §766

9

(1979).

On the first factor, the court finds as a matter of law that the plaintiff has established that there was an existing contractual relationship between himself and Glen Oak.  The parties signed the Standard Form of Agreement on May 12, 2002. (Ex. P-1).  Although the face page of the contract does not contain a detailed description of the project, location, address and scope, Article 2 of the contract, "Scope of Architect's Basic Services," provides for the Schematic Design Phase, Design Development Phase, Construction Documents Phase, Bidding or Negotiation Phase, and Construction Phase. (Ex. P-1, Article 2, ¶¶ 2.2-2.6). Article 11 of the contract, "Basis of Compensation," provides, that for the architect's basic services, basic compensation shall be computed at "[a] sum of 7.2% of the total cost for services mentioned herein in Article 1 and Article 2."  (Ex. P-1, Article 11. ¶11.2.1). It further provides, that where compensation is based on a stipulated sum or percentage of the construction cost, progress payments for basic services in each phase shall total the following percentages of the total basic compensation payable: Schematic Design Phase: 5%; Design Development Phase: 15%; Construction Documents Phase: 50%; Bidding or Negotiation Phase: 5%; and Construction Phase: 25%.  (Ex. P-1, Article 11, ¶11.2.2). Therefore, the contract entered into between the plaintiff and Glen Oak provides for services and compensation beyond the schematic phase. Despite the defendant's contention to the contrary, there is nothing in the

contract limiting the plaintiff's services to the schematic phase.

In addition, the contract contains the following provisions:

## ARTICLE 8

### TERMINATION, SUSPENSION OR ABANDONMENT

8.1   This Agreement may be terminated by either party upon not less than seven days' **written** notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

8.2   If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension.  When the project is resumed, the Architect's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Architect's services.

8.3   This Agreement may be terminated by the Owner upon not less than seven days' **written** notice to the Architect in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than 90 consecutive days, the Architect may terminate this Agreement by giving **written** notice.

8.4   Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

8.5   If the Owner fails to make payment when due the Architect for services and expenses, the Architect may, upon seven days' **written** notice to the Owner, suspend performance of services under this Agreement.  Unless payment in full is

11

received by the Architect within seven days of the date of the notice, the suspension shall take effect without further notice.  In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.

8.6     In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due[4].

(emphasis added).  Each of the provisions for termination, suspension or abandonment require <u>written</u> notice within a specified time by the party initiating such action.  Here, the evidence establishes that no written notice was provided by Glen Oak to the plaintiff terminating, suspending, or abandoning the project during any time relevant to the instant action. Therefore, at the time MOS Design, Inc. contracted with Glen Oak to provide architectural services on August 2, 2003, the contract between the plaintiff and Glen Oak was still in effect.

Regarding the second factor, the plaintiff must establish both intentional and improper behavior on behalf of the defendant.  <u>Peoples Mortgage Co., Inc. v. Federal Nat'l Mortgage Ass'n</u>, 856 F.Supp. 910, 938 (E.D.Pa.1994) (citing Restatement (Second) Torts §766; <u>Geofreeze Corp. v. C. Hannah Constr. Co.</u>, 588 F.Supp. 1341, 1344 (E.D.Pa.1984)).  To establish intent, the

---

[4]The remaining provisions set forth in the Standard Form of Agreement between Owner and Architect were stricken by the parties.

plaintiff must show that the defendant knew "an injury [was] certain or substantially certain to occur as a result of his action." Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp., 974 F.Supp. 822, 846 (E.D.Pa.1997)(internal citations omitted); Total Care Sys., Inc. v. Coons, 860 F.Supp. 236, 241 (E.D.Pa.1994)("[I]ntent in this [tortious interference with contract] case may be shown where the actor knows an injury is certain or substantially certain to occur as a result of his action.")(internal citation omitted)). **Comment j** to §766 states that the cause of action "is broader. . . in its application than to cases in which the defendant has acted with [the] purpose or desire" of interference with a contract. The cause of action also includes intentional interference, as that term is defined in §8A[5], in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire, but known to him to be a necessary consequence of his action. Restatement (Second) Torts §766, **comment j**.

As a threshold matter, in establishing the requisite intent, the plaintiff must show that defendant had knowledge of the existing contract. It is obvious that one cannot intentionally interfere with a contract of which he has

---

[5]Section 8A defines "intent" for purposes of the Torts Restatement. It provides that "[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."

no knowledge. General knowledge of a business relationship is not sufficient; the defendant must have specific knowledge of the contract right upon which his actions infringe. Restatement (Second) of Torts, §766, **comment i**. <u>See</u>, <u>e.g.</u>, <u>DiGiorgio Corp. v. Mendez and Co., Inc.</u>, 230 F.Supp.2d 552, 564 (D.N.J. 2002)(citing <u>Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.</u>, 870 F.Supp. 1237, 1247 (D.N.J.1994)). However, the defendant need not have knowledge of the specific terms of the contract. <u>See</u> <u>Posner v. Lankenau Hosp.</u>, 645 F.Supp. 1102, 1112 -13 (E.D.Pa.,1986).

In the instant action, the plaintiff has failed to present sufficient evidence to establish that the defendant knew or had reason to know of the contract existing between the plaintiff and Glen Oak. The plaintiff's primary argument on this issue is that the defendant knew or should have known of the contract between himself and Glen Oak because Mr. Ogozalek had been presented with several schematic drawings which contained the plaintiff's name and logo. The plaintiff argues that this should have raised a flag for the defendant to inquire as to the relationship between the plaintiff and Glen Oak.

No such duty exists. Initially, both the plaintiff and Mr. Ogozalek testified that they have prepared schematic drawings, in the past, where there was no contract. Both have also testified that they have prepared schematic drawings on projects that never proceeded past the design phase. (TR. 15, 172).

Moreover, the evidence of record establishes that the defendant was

14

approached by Glen Oak with a proposal to perform architectural services. (TR. 106-07).  At that time, the defendant's agent, Mr. Ogozalek, was not a member of Glen Oak, nor did he know any of the Glen Oak Board members. He did not know that Glen Oak was considering renovations to the facility in 2002 or at any other time until the time he was contacted by Shapiro.  The defendant was not informed that Glen Oak was under contract with the plaintiff and, in fact, was specifically advised that although the plaintiff had performed previous services for Glen Oak, he was not being used on the proposed project.  After the defendant had agreed to take on the proposed project, Mr. Ogozalek requested any drawings of the existing structure.  (TR. 88-89).  It was then that Mr. Ogozalek was presented with a packet of materials which included, among other things, some of the plaintiff's schematics.  While the plaintiff's name and logo were on some of those drawings, the plaintiff's schematics reflected a much larger project than the project for which the defendant was being solicited.  All of this, coupled with the testimony from both the plaintiff and the defendant that they have each performed schematic work on projects without a contract and that they have prepared schematics on projects that did not proceed past the schematic phase, leads the court to conclude that there was no reason for the defendant to believe that the plaintiff was under an existing contract to design and construct the project for which the defendant had just been retained.  Nor was there a duty on behalf of Mr. Ogozalek to investigate such a possibility.

15

Furthermore, in order to establish the second element of his claim, the plaintiff must show that the defendant acted by "inducing or otherwise causing[6]" Glen Oak not to perform its contract with the plaintiff.  Concerning the plaintiff's claim of improper inducement, as set forth in **Comment h** accompanying §766, "inducing" would refer to the situation in which the defendant caused Glen Oak to choose one course of conduct rather than another. Whether the defendant caused the choice by persuasion or by intimidation, Glen Oak would be free to choose the other course if it was willing to suffer the consequences.  Inducement, therefore, operates on the mind of the person induced.

In this case, there is no evidence that the defendant induced Glen Oak into not performing its contract with the plaintiff.  As indicated, inducement

---

[6] There is no claim in this case that the defendant "otherwise caused" Glen Oak not to perform the contract with the plaintiff.  **Comment h** to §766 provides, in relevant part, that:

> The phrase "otherwise causing" refers to the situations in which A leaves B no choice, as, for example, when A imprisons or commits such a battery upon B that he cannot perform his contract with C, or when A destroys the goods that B is about to deliver to C.  This is also the case when performance by B of his contract with C necessarily depends upon the prior performance by A of his contract with B and A fails to perform in order to disable B from performing for C.

Restatement (Second) Torts §766, **Comment h**.

operates on the mind of the person induced.  There is nothing in the record which would establish that the defendant caused Glen Oak to choose one course of conduct rather than another through persuasion, intimidation, or otherwise.  In fact, the defendant did not initiate contact with Glen Oak about the project.  The defendant had no previous knowledge of the project. Rather, it was Glen Oak that contacted the defendant. Moreover, the uncontradicted evidence in the record is that at the time Glen Oak contacted the defendant, it had already been decided by the Board that the plaintiff would not be used as the architect on the project, regardless of the actions of the defendant.  (TR. 108-09).

Based upon the above, the court finds, as a matter of law, that the plaintiff has failed to establish the second element of his intentional interference claim by a preponderance of the evidence. Specifically, the plaintiff has failed to establish that the defendant knew or should have known of the existing contract between the plaintiff and Glen Oak, or that the defendant induced Glen Oak into not performing its contract with the plaintiff.

Because the court finds that the plaintiff has failed to meet his burden with respect to the second element of his intentional interference claim, the elements regarding privilege or justification and damages need not be reached.

17

## IV.   CONCLUSION

For the foregoing reasons, judgment will be entered in favor of the defendant, MOS Design, Inc., and against the plaintiff, John Gianacopoulos, on his claim of intentional interference with performance of a contract.   An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** April 16, 2008

O:\shared\MEMORANDUMS\2005 MEMORANDUMS\05-2417.01.wpd

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**JOHN GIANACOPOULOS,**                    :

           **Plaintiff**              :     **CIVIL ACTION NO. 3:05-2417**

    **v.**                                      :

                            **(MANNION, M.J.)**

**MOS DESIGN, INC.,**                       :

           **Defendant**            :

## O R D E R

Based upon the memorandum issued this same day, **IT IS HEREBY
ORDERED THAT** judgment shall be entered in favor of the defendant, MOS
Design, Inc., and against the plaintiff, John Gianacopoulos.


                             *s/ Malachy E. Mannion*
                             **MALACHY E. MANNION**
                             **United States Magistrate Judge**


**Date:** April 16, 2008
O:\shared\MEMORANDUMS\2005 MEMORANDUMS\05-2417.01.wpd